Raph Graybill
**GRAYBILL LAW FIRM, P.C.**
300 4th St. N.
P.O. Box 3586
Great Falls, MT 59403
Tel: (406) 452-8566
raph@graybilllawfirm.com

*Appearances continued on next page*

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MONTANA
## MISSOULA DIVISION

| | |
|---|---|
| MICHELLE LIGHTER, JOHN BROWN, TRENA OSTLUND, KARIM LAURY, and EVE FIELDS, on behalf of themselves and all others similarly situated; | |
| *Plaintiffs*, | Case No. _____ |
| v. | **CLASS ACTION COMPLAINT** |
| VGW HOLDINGS LIMITED, VGW MALTA HOLDING LIMITED, VGW MALTA LIMITED, VGW GAMES LIMITED, VGW GP LIMITED, VGW HOLDINGS US INC., VGW US, INC., VGW LUCKYLAND INC., and DOES 1-25; | **Jury Trial Demanded** |
| *Defendants*. | |

Bryan Caforio*
Krysta Kauble Pachman*
Erik L. Wilson*
Julian Schneider*
**SUSMAN GODFREY L.L.P.**
1900 Avenue of the Stars, Suite 1400
Los Angeles, California 90067-6029
Tel: (310) 789-3100
bcaforio@susmangodfrey.com
kpachman@susmangodfrey.com
ewilson@susmangodfrey.com
jschneider@susmangodfrey.com


*Pro hac vice applications forthcoming*

## COMPLAINT

Plaintiffs Michelle Lighter, John Brown, Trena Ostlund, Karim Laury, and Eve Fields ("Plaintiffs"), individually and on behalf of the Class and Sub-Classes defined below, bring this civil action against Defendants VGW Holdings Limited; VGW Malta Holding Limited; VGW Malta Limited; VGW Games Limited; VGW GP Limited; VGW Holdings US Inc.; VGW US, Inc.; and VGW LuckyLand Inc. (collectively, "Defendants" or "VGW"); and Does 1-25 ("Doe Defendants"), and allege as follows.

## I.    SUMMARY OF THE ACTION

1.    Gambling is, and has always been, illegal or heavily regulated in most states. These states have made it illegal to operate in person or online casinos, or otherwise facilitate the winning or losing something of value in a game with elements of chance. This ban encompasses traditional casino games like slot machines, video poker, dice games (*e.g.*, craps), and card games (*e.g.*, blackjack and poker).

2.    VGW owns and operates (or at all relevant times operated) at least three online casinos—Chumba Casino, LuckyLand Slots, and Global Poker ("VGW Casinos")—in numerous states that expressly prohibit such gambling. The VGW Casinos operate largely the same as any other casino: the casinos take and convert gamblers' cash into virtual casino chips or slot machine credits (referred to as

"coins"), and then gamblers wager those virtual casino coins in a variety of games of chance, including slot machines, craps, blackjack, and poker.

3.    As shown below, these games are designed to look and feel just like traditional casino games in traditional casinos:





4.      If the gambler wins the bet, the casinos pay the gambler his or her winnings in additional virtual casino coins. This gives the gambler the opportunity to place more bets or redeem the casino coins for cash. This is quintessential gambling. The VGW Casinos raked in more than $4 billion in global gambling revenues in 2024 alone, with the vast majority coming from the United States—and the majority of that coming from states that expressly prohibit gambling.

5.      Defendants attempt to skirt these states' anti-gambling laws by giving gamblers two types of casino coins: (1) "gold" coins, which can be wagered but cannot be redeemed for cash; and (2) "sweepstakes" coins, which are each worth $1 and can be redeemed for $1 in cash. Gamblers purchase packages of gold coins that come with "free" sweepstakes coins worth at least the purchase price (or more). For example, if a gambler deposits $300 at Chumba Casino, he/she receives $315 worth of cash-redeemable sweepstakes coins (and millions of unredeemable gold coins).

6.      VGW's gold coin casino chips work like gift cards: VGW converts gamblers' cash into digital credits that can be redeemed only for valuable services

at a particular company, and the company will not redeem the cards for cash once purchased. Gamblers can redeem their gold coins only within the casino for casino game play. Like gift cards and other casino chips, gold coins are things of value.

7.    Sweepstakes coins are direct equivalents to traditional casino chips: they have a cash value, can be gambled like cash, and the VGW Casinos agree to exchange them for their designated cash value. If the gambler wins 10,000 sweepstakes coins, Defendants agree they must pay the gambler $10,000 in cash.

8.    Gamblers pay real money to purchase packages of gold coins and sweepstakes coins together. Gamblers then wager both types of coins in the hopes of winning more coins, which can be either used for additional bets, or cashed out for real money in a direct dollar-for-dollar exchange. That the sweepstakes coins are "free" does not make them valueless, and that the gold coins cannot be redeemed for cash does not make them valueless, either. Gambling with either is still gambling. After all, depending on luck, the gambler will either lose the wagered coins or win more coins. That the casino has structured itself to take in cash with its left hand while only paying out cash with its right hand does not convert gambling into something else.

9.    This is the same business model used by other purveyors of illegal or highly regulated vices: VGW uses the gold coins to give users a "taste" of VGW's real-money gambling, get gamblers "hooked" on that gambling, and get gamblers to

keep coming back to the casino with more and more cash in hand. Further, by giving gamblers hundreds of thousands to millions of gold coins and then forcing gamblers to bet hundreds (and up to millions) of gold coins on each hand or spin, VGW grooms gamblers to place consistently large bets on each spin or hand.

10.     The VGW Casinos intentionally design their games to exploit this grooming by (as shown below) allowing the gamblers to instantly switch from gold coins to sweepstakes coins between every slot pull, hand of cards, or roll of the dice. The gambler that gets the taste of a big win with gold coins can immediately chase the rush with sweepstakes coins. The gambler on the long losing streak with gold coins can switch mid-game to sweepstakes coins when they become convinced their losing streak is about to break.

You may switch the coins you are using in the game by clicking on the icon of the type of coin that you want to use.



11.     The VGW Casinos also groom gamblers with vivid colors, dynamic animations, high quality graphics, engrossing sound effects, and other enticements carefully designed to hijack the gamblers' attention and keep them betting. If the gamblers run out of sweepstakes coins, gold coins can tide them over until the itch

to gamble real money sweepstakes coins takes over and the gamblers put more real money on the table.

12.    Indeed, Defendants themselves have admitted that their companies "develop[] and operate[] proprietary technology in ***real money gaming***," that the VGW Casinos are "***targeting*** . . . the unrealized United States ***real-money gaming market***," and that their "***[s]weepstakes gameplay entails [] real money, online gaming***" in the United States, "where [real money] online gaming is largely prohibited."

13.    Every aspect of the VGW Casinos is carefully curated to create and capitalize upon compulsive, addictive, and destructive behaviors. Protecting citizens and their families from predatory casinos is why states passed these anti-gambling laws. Bars cannot sell alcohol to minors by selling them something non-alcoholic and then including an alcoholic drink as a "free gift." VGW cannot use these same tactics to avoid gambling laws or deny that they offer real money gambling.

14.    Multiple states, including Idaho, Washington, Delaware, Connecticut, Michigan, and Nevada have become aware of Defendants' casinos and sent them cease-and-desist letters for violating nearly identical anti-gambling statutes. Defendants have shut down, or are in the process of shutting down, their offending operations instead of fighting. It speaks volumes that Defendants would rather

abandon tens to hundreds of millions of dollars in annual revenues from these states instead of defending their scheme to an attorney general.

15.    Plaintiffs and Class members live in states that not only prohibit illicit casino gambling, but expressly permit gamblers or their family members to recover anything and everything gambled and lost in Defendants' illegal casinos. These states—which include Montana, Illinois, Kentucky, Ohio, and Tennessee—force casinos to disgorge any losses to family members for a variety of reasons, including to: (1) discourage gambling; (2) prevent casinos from profiting from illegal gambling; (3) prevent gambling addiction and its destructive societal harms; (4) protect families from the financial devastation that gambling can wreak on families; and (5) ensure that any gambling in the state is authorized, properly regulated, and taxed for the benefit of its state residents. The VGW Casinos are especially pernicious and addictive because gamblers can access these casinos 24 hours a day, seven days a week, directly from a phone app or computer. Money that would otherwise be used to pay for rents, mortgages, utilities, food, clothing, school supplies, and medical care goes instead to VGW's illegal casinos. Families are left in financial ruin. These are the exact harms these laws are designed to prevent.

16.    Plaintiffs and Class members are family members of gamblers who lost tens of millions of dollars in real money gambling at the VGW Casinos. They have

statutory rights to recover the losses from VGW and bring this action to force VGW to disgorge those losses under the anti-gambling laws of their respective states.

## II.    PARTIES

### a.    PLAINTIFFS

#### i.  Plaintiff Michelle Lighter (Montana)

17.    Plaintiff Michelle Lighter is, and at all relevant times was, an adult natural person and a resident of Montana. Plaintiff Lighter is, and at all relevant times was, the spouse of Patrick Olsen, an adult natural person and resident of Montana.

18.    Including after January 1, 2023, and while located within Montana, Mr. Olsen gambled and lost at least $4,500 in money, cryptocurrency, utility or security tokens, virtual casino chips, and/or other property or things of value at Chumba Casino. Mr. Olsen played at the Chumba Casino approximately every few days between these dates. Mr. Olsen deposited or otherwise transferred money into Chumba Casino approximately every few days in increments of between approximately $20 and $300. Each time Mr. Olsen deposited money into Chumba Casino, he received cryptocurrency, utility or security tokens, virtual casino chips, and/or other things of value in exchange. Mr. Olsen then wagered these cryptocurrency, utility or security tokens, virtual casino chips, and/or other things of value on casino games and/or other games of chance at Chumba Casino. Mr. Olsen lost everything he wagered. He has not sued to recover his losses.

19.     Plaintiff Lighter and Mr. Olsen share joint bank accounts, joint credit cards, and hold their money and property jointly. The money, cryptocurrency, utility or security tokens, virtual casino chips, and/or other property or things of value Mr. Olsen gambled and lost at the VGW Casinos was his and Plaintiff Lighter's community property. Thus, Plaintiff Lighter suffered a direct and concrete financial harm as a result of VGW's illegal gambling enterprise. During the relevant period, Plaintiff Lighter was unaware that Mr. Olsen was gambling and losing money in VGW's illegal, online casinos. VGW fraudulently conceals its operation of real money gambling enterprises and misleads consumers to believe that their casino operation is authorized within the state. Due to this fraudulent concealment, Plaintiff Lighter could not have reasonably discovered that VGW was operating an illegal casino in which Mr. Olsen was losing money.

20.     Plaintiff Lighter never gambled on, or otherwise accessed or used, the VGW Casinos. She never reviewed, signed, accepted, or consented to any agreement with VGW (including but not limited to any of VGW's purported Terms and Conditions or arbitration agreements). Plaintiff Lighter also never waived or impaired any rights or claims against VGW (including but not limited to any class action waivers). At all relevant times, she was unaware of the terms of any agreements that Mr. Olsen may have entered into with VGW (including but not limited to any of VGW's purported Terms and Conditions, arbitration agreements,

or class action waivers). At all relevant times, Plaintiff Lighter and Mr. Olsen were unaware that the VGW Casinos were illegal gambling enterprises under Montana state law.

### ii.  Plaintiff John Brown (Illinois)

21.    Plaintiff John Brown is, and at all relevant times was, an adult natural person and a resident of Illinois. Plaintiff Brown is, and at all relevant times was, the spouse of Courtney Brown, an adult natural person and resident of Illinois.

22.    Including between September 4, 2024, and March 2, 2025, and while located within Illinois, Courtney Brown gambled and lost at least $33,600 in money, cryptocurrency, utility or security tokens, virtual casino chips, and/or other property or things of value at Chumba Casino. Mrs. Brown played at the Chumba Casino on a near-daily basis between these dates. Mrs. Brown deposited or otherwise transferred money into Chumba Casino on a near daily basis in increments of between $15 to $300. Each time Mrs. Brown deposited money into Chumba Casino, she received cryptocurrency, utility or security tokens, virtual casino chips, and/or other things of value in exchange. Mrs. Brown then wagered these cryptocurrency, utility or security tokens, virtual casino chips, and/or other things of value on casino games and/or other games of chance at Chumba Casino. Mrs. Brown lost everything she wagered. She has not sued to recover her losses.

23.    Plaintiff Brown and Mrs. Brown share joint bank accounts, joint credit cards, and hold their money and property jointly. The money, cryptocurrency, utility or security tokens, virtual casino chips, and/or other property or things of value Mrs. Brown gambled and lost at the VGW Casinos was her and Plaintiff Brown's community property. Thus, Plaintiff Brown suffered a direct and concrete financial harm as a result of VGW's illegal gambling enterprise.

24.    Plaintiff Brown never gambled on, or otherwise accessed or used, the VGW Casinos. He never reviewed, signed, accepted, or consented to any agreement with VGW (including but not limited to any of VGW's purported Terms and Conditions or arbitration agreements). Plaintiff Brown also never waived or impaired any rights or claims against VGW (including but not limited to any class action waivers). At all relevant times, he was unaware of the terms of any agreements that Mrs. Brown may have entered into with VGW (including but not limited to any of VGW's purported Terms and Conditions, arbitration agreements, or class action waivers). At all relevant times, Plaintiff Brown and Mrs. Brown were unaware that the VGW Casinos were illegal gambling enterprises under Illinois state law.

### iii. Plaintiff Trena Ostlund (Kentucky)

25.    Plaintiff Trena Ostlund is, and at all relevant times was, an adult natural person and a resident of Kentucky. Plaintiff Ostlund is, and at all relevant times was, the spouse of Jose Ostlund, an adult natural person and resident of Kentucky.

26.    Including between August 8, 2024, and January 22, 2025, and while located within Kentucky, Mr. Ostlund gambled and lost at least $915 in money, cryptocurrency, utility or security tokens, virtual casino chips, and/or other property or things of value at LuckyLand Slots. Mr. Ostlund played at the LuckyLand Slots casino on a near-daily basis between these dates. Mr. Ostlund deposited or otherwise transferred money into the LuckyLand Slots casino at least once per week (and sometimes daily to multiple times per day) in increments of between $10 and $21. Each time Mr. Ostlund deposited money into LuckyLand Slots, he received cryptocurrency, utility or security tokens, virtual casino chips, and/or other things of value in exchange. Mr. Ostlund then wagered these cryptocurrency, utility or security tokens, virtual casino chips, and/or other things of value on casino games and/or other games of chance at LuckyLand Slots. Mr. Ostlund lost everything he wagered. He has not sued to recover his losses.

27.    Plaintiff Ostlund and Mr. Ostlund share joint bank accounts, joint credit cards, and hold their money and property jointly. The money, cryptocurrency, utility or security tokens, virtual casino chips, and/or other property or things of value Mr. Ostlund gambled and lost at the VGW Casinos was his and Plaintiff Ostlund's community property. Thus, Plaintiff Ostlund suffered a direct and concrete financial harm as a result of VGW's illegal gambling enterprise.

28.    Plaintiff Ostlund never gambled on, or otherwise accessed or used, the VGW Casinos. She never reviewed, signed, accepted, or consented to any agreement with VGW (including but not limited to any of VGW's purported Terms and Conditions or arbitration agreements). Plaintiff Ostlund also never waived or impaired any rights or claims against VGW (including but not limited to any class action waivers). At all relevant times, she was unaware of the terms of any agreements that Mr. Ostlund may have entered into with VGW (including but not limited to any of VGW's purported Terms and Conditions, arbitration agreements, or class action waivers). At all relevant times, Plaintiff Ostlund and Mr. Ostlund were unaware that the VGW Casinos were illegal gambling enterprises under Kentucky state law.

### iv.  Plaintiff Karim Laury (Ohio)

29.    Plaintiff Karim Laury is, and at all relevant times was, an adult natural person and a resident of Ohio. Plaintiff Laury is, and at all relevant times was, the spouse of Cody Kuchan, an adult natural person and resident of Ohio.

30.    Including between June 6, 2024, and February 28, 2025, and while located within Ohio, Mr. Kuchan gambled and lost at least $2,400 in money, cryptocurrency, utility or security tokens, virtual casino chips, and/or other property or things of value at Chumba Casino. Mr. Kuchan played at the Chumba Casino on a near-daily basis between these dates. Mr. Kuchan deposited or otherwise

transferred money into Chumba Casino approximately every few days in increments of between $1 to $20. Each time Mr. Kuchan deposited money into Chumba Casino, he received cryptocurrency, utility or security tokens, virtual casino chips, and/or other things of value in exchange. Mr. Kuchan then wagered these cryptocurrency, utility or security tokens, virtual casino chips, and/or other things of value on casino games and/or other games of chance at Chumba Casino. Mr. Kuchan lost everything he wagered. He has not sued to recover his losses.

31.    Plaintiff Laury and Mr. Kuchan share joint bank accounts, joint credit cards, and hold their money and property jointly. The money, cryptocurrency, utility or security tokens, virtual casino chips, and/or other property or things of value Mr. Kuchan gambled and lost at the VGW Casinos was his and Plaintiff Laury's community property. Thus, Plaintiff Laury suffered a direct and concrete financial harm as a result of VGW's illegal gambling enterprise.

32.    Plaintiff Laury never gambled on, or otherwise accessed or used, the VGW Casinos. He never reviewed, signed, accepted, or consented to any agreement with VGW (including but not limited to any of VGW's purported Terms and Conditions or arbitration agreements). Plaintiff Laury also never waived or impaired any rights or claims against VGW (including but not limited to any class action waivers). At all relevant times, he was unaware of the terms of any agreements that Mr. Kuchan may have entered into with VGW (including but not limited to any of

VGW's purported Terms and Conditions, arbitration agreements, or class action waivers). At all relevant times, Plaintiff Laury and Mr. Kuchan were unaware that the VGW Casinos were illegal gambling enterprises under Ohio state law.

### v. Plaintiff Eve Fields (Tennessee)

33.    Plaintiff Eve Fields is, and at all relevant times was, an adult natural person and a resident of Tennessee. Plaintiff Fields is, and at all relevant times was, the spouse of Daniel Fields, an adult natural person and resident of Tennessee.

34.    Including between December 29, 2023, and February 3, 2025, and while located within Tennessee, Mr. Fields gambled and lost at least $3,400 in money, cryptocurrency, utility or security tokens, virtual casino chips, and/or other property or things of value at the VGW Casinos. Mr. Fields gambled at least $5,300 at the Chumba Casino ($1,100), LuckyLand Slots ($2,200), and Global Poker ($1,900), and only won $1,825. Mr. Fields played at the Chumba Casino, LuckyLand Slots, and/or Global Poker casino on a near-daily basis between these dates. Mr. Fields deposited or otherwise transferred money into these casinos every few days in increments of between $1.98 and $49.99. Each time Mr. Fields deposited money into these casinos, he received cryptocurrency, utility or security tokens, virtual casino chips, and/or other things of value in exchange. Mr. Fields then wagered these cryptocurrency, utility or security tokens, virtual casino chips, and/or

other things of value on casino games and/or other games of chance. Mr. Fields lost at least $3,400. He has not sued to recover his losses.

35.    Plaintiff Fields and Mr. Fields share joint bank accounts, joint credit cards, and hold their money and property jointly. The money, cryptocurrency, utility or security tokens, virtual casino chips, and/or other property or things of value Mr. Fields gambled and lost at the VGW Casinos was his and Plaintiff Fields's community property. Thus, Plaintiff Fields suffered a direct and concrete financial harm as a result of VGW's illegal gambling enterprise.

36.    Plaintiff Fields never gambled on, or otherwise accessed or used, the VGW Casinos. She never reviewed, signed, accepted, or consented to any agreement with VGW (including but not limited to any of VGW's purported Terms and Conditions or arbitration agreements). Plaintiff Fields also never waived or impaired any rights or claims against VGW (including but not limited to any class action waivers). At all relevant times, she was unaware of the terms of any agreements that Mr. Fields may have entered into with VGW (including but not limited to any of VGW's purported Terms and Conditions, arbitration agreements, or class action waivers). At all relevant times, Plaintiff Fields and Mr. Fields were unaware that the VGW Casinos were illegal gambling enterprises under Tennessee state law.

**b. DEFENDANTS.**

37.    Upon information and belief, Defendant VGW Holdings Limited ("VGW Parent") is an Australian parent company that fully controls and directs the downstream operations of a large network of wholly owned subsidiary companies, including VGW Malta Holding Limited; VGW Malta Limited; VGW Games Limited; VGW GP Limited; VGW Holdings US Inc.; VGW US, Inc.; and VGW LuckyLand Inc. ("Controlled Subsidiaries").

38.    VGW Parent refers to these wholly owned subsidiaries as "controlled entities" in its public financial reports and includes these subsidiaries' revenues as its own. VGW Parent owns and operates VGW Play (https://vgwplay.com/), which directly links consumers to all three VGW Casinos: Chumba Casino, LuckyLand Slots, and Global Poker. The VGW Casinos are illegal gambling enterprises under the laws of the numerous states, including Montana, Illinois, Kentucky, Ohio, and Tennessee ("Sub-Class States"). VGW Parent, through the Controlled Subsidiaries, controls, operates, and markets (or at all relevant times controlled, operated, and marketed) the VGW Casinos across the United States, including in the Sub-Class States. VGW Parent described itself in a prospectus as "operat[ing] a social (or online) casino through its wholly owned gaming platform[s]" and "deriv[ing] the majority of revenues from its wholly owned gaming platform[s]." VGW Parent exercises complete dominion and control over the Controlled Subsidiaries' finances

and operations. The Controlled Subsidiaries are mere agents or alter egos of VGW Parent.

39.    Upon information and belief, Defendant VGW Malta Holding Limited is an Island of Malta company that maintains offices in Australia. VGW Malta Holding Limited owns and operates a series of wholly owned subsidiaries, including VGW Malta Limited (which owns Chumba Casino), VGW Games Limited (which co-operates all three VGW Casinos), and VGW GP Limited (which owns Global Poker). VGW Malta Holding Limited controls the illegal gambling operations of its wholly owned subsidiaries under the ultimate direction of VGW Parent.

40.    Upon information and belief, Defendant VGW Malta Limited is an Island of Malta company that maintains offices in Australia. VGW Malta Limited owns Chumba Casino (https://www.chumbacasino.com/) and co-operates it with VGW Games Limited. VGW Malta Limited co-operates (or at all relevant times co-operated) the illegal gambling operations of Chumba Casino in the Sub-Class States under the ultimate direction of VGW Parent.

41.    Upon information and belief, Defendant VGW Games Limited is an Island of Malta company that maintains offices in Australia. VGW Games Limited co-operates the VGW Casinos with VGW Malta Limited, VGW LuckyLand Inc., and VGW GP Limited. VGW Games Limited co-operates the illegal gambling operations of the VGW Casinos under the ultimate direction of VGW Parent.

42.     Upon information and belief, Defendant VGW GP Limited is an Island of Malta company that maintains offices in Australia. VGW GP Limited owns and co-operates Global Poker (https://globalpoker.com/) with VGW Games Limited. VGW GP Limited co-operates (or at all relevant times co-operated) the illegal gambling operations of Global Poker in the Sub-Class States under the ultimate direction of VGW Parent.

43.     Upon information and belief, Defendant VGW Holdings US Inc. is a Delaware corporation headquartered in Boulder, Colorado. VGW Holdings US Inc. owns and operates a series of wholly owned subsidiaries, including VGW US, Inc. and VGW LuckyLand Inc. (which owns LuckyLand Slots). VGW Holdings US Inc. controls the illegal gambling operations of these wholly owned subsidiaries under the ultimate direction of VGW Parent.

44.     Upon information and belief, Defendant VGW US, Inc. is a Delaware corporation headquartered in Boulder, Colorado. VGW US, Inc., in conjunction with other VGW entities, co-operates the illegal gambling operations of the VGW Casinos under the ultimate direction of VGW Parent.

45.     Upon information and belief, Defendant VGW LuckyLand Inc. is a Delaware corporation headquartered in Boulder, Colorado, with offices in San Francisco, California and Portsmouth, New Hampshire. VGW LuckyLand Inc. owns and co-operates LuckyLand Slots (https://luckylandslots.com/) with VGW Games

Limited. VGW LuckyLand Inc. co-operates (or at all relevant times co-operated) the illegal gambling operations of LuckyLand Slots in the Sub-Class States under the ultimate direction of VGW Parent.

46.    The true names and capacities, whether individual, corporate, association, or otherwise, of the Doe Defendants are unknown to Plaintiffs, who therefore sue said Defendants by fictitious names. Plaintiffs are informed and believe, and thereupon allege, that each of the Doe Defendants designated herein is responsible in the same manner for the events and happenings herein referred to, and in some manner caused the injuries and damages to Plaintiffs alleged herein, and include Defendant's agents, predecessors-in-interest, successors-in-interest, and assigns. Plaintiffs will ask leave of the court to amend this Complaint to insert the true names and capacities of said Defendants when the same have been ascertained by Plaintiffs, together with the appropriate charging allegations, and to join such Defendants in this action.

## III.    JURISDICTION AND VENUE

47.    This Court has subject matter jurisdiction over Plaintiffs' claims under the Class Action Fairness Act, 28 U.S.C. § 1332(d) ("CAFA"), because: (1) this is a class action with minimal diversity between at least one Plaintiff and one Defendant (*i.e.*, at least one class member is a citizen of a state that of which one Defendant is not a citizen); (2) there are at least 100 class members; (iii) the aggregate amount of

damages exceeds $5,000,000 exclusive of interest and costs; and (iv) no other reasons exist under CAFA for this Court to decline jurisdiction.

48.    This Court has personal jurisdiction over Defendants because Defendants have sufficient minimum contacts in Montana to render the exercise of jurisdiction by this Court proper and necessary, including but not limited to the facts that Defendants: (1) intentionally conducted significant business transactions within Montana, including by operating an illegal gambling enterprise for Montana residents in violation of Montana law; (2) intentionally solicited Montana residents for its illegal gambling operations, including by running targeted ads on social media platforms directed to Montana residents; (3) took money and other valuable property from Montana residents through its interactive illegal gambling operations; and (4) committed wrongful conduct against, and/or caused wrongful harm to, Montana Plaintiff Lighter and the other members of the Montana Sub-Class.

49.    Venue is proper in this District under 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the Plaintiff Lighter's and Montana Sub-Class members' claims occurred within this District.

## IV.    FACTUAL ALLEGATIONS

### a. VGW AND ITS ILLEGAL "SOCIAL" AND "SWEEPSTAKES" CASINOS

50.    VGW is the biggest "social casino" or "sweepstakes casino" operator in the world. Social/sweepstakes casinos are online casinos that became popularized

through social media apps like Facebook and operate completely online using virtual casino chips. VGW operates three of the oldest and most popular social/sweepstakes casinos: Chumba Casino, LuckyLand Slots, and Global Poker. VGW Parent was founded in 2010. Global Poker launched in 2011, followed by Chumba Casino in 2012, and LuckyLand Slots in 2019.

51.    Based on publicly available information, VGW's revenues topped $4 billion in 2024, comprising approximately 50% of the current global social and sweepstakes casino market share. In earlier years, VGW's market share was reported to be as high as 90%. The vast majority of these revenues are taken from the United States.

52.    Chumba Casino is the most popular social/sweepstakes casino in the United States; it took in more than $3.3 billion in gambling revenues in 2024. LuckyLand Slots raked in $1.2 billion, while Global Poker pocketed nearly a quarter billion. The VGW Casinos' revenues are expected to continue increasing in 2025 and beyond, with the vast majority of those gambling revenues taken from gamblers in the United States, and the majority of that coming from states, like the Sub-Class States, where gambling is illegal.

53.    The VGW Casinos operate online through their websites or mobile phone/computer apps. Chumba Casino allows gamblers to play over 200 slot machines and various casino table games like blackjack and craps. LuckyLand Slots

also allows gamblers to play more than 100 slot machines. And Global Poker allows gamblers to play various poker games, slot machines, and other table games like blackjack. Once registered with a VGW Casino, gamblers can spend real money to buy virtual casino chips called "coins" that can be used to play these casino games.

54.     The various games at the VGW Casinos are designed to look and operate just like familiar casino slot machines and table games at traditional casinos:









55.    VGW's social/sweepstakes casino model is based on a two-coin system. There are two types of coins that gamblers play with: (1) "**gold**" coins, which can be played but cannot be redeemed for cash (the "social casino" side); and (2) "**sweepstakes**" coins, which are each worth $1 and can be redeemed for $1 in cash (the "sweepstakes casino" side).

56.    VGW's gold coin casino chips work like gift cards: VGW converts gambler's cash into digital credits that can be redeemed only for valuable services

at a particular company, and the company will not redeem the cards for cash once purchased. Gamblers can only redeem their gold coins within the casino for casino game play. Like gift cards and other casino chips, gold coins are things of value.

57.    Sweepstakes coin casino chips are more direct equivalents to traditional casino chips: they have a cash value, can be gambled like cash, and the casino is required to exchange them for cold hard cash.

58.    Whenever a gambler "purchases" gold coins that come with "free" sweepstakes coins, the gambler will also get at least the amount he/she deposited in sweepstakes coins. For example, if a gambler deposits $300 at Chumba, he/she receives $315 worth of cash-redeemable sweepstakes coins (and millions of unredeemable gold coins). Chumba even adds a dollar sign to the left of the "free" sweepstakes coins to remind gamblers that they will get at least the value of their cash deposit in cash-redeemable sweepstakes coins (once they gamble them):



59.    Just like in a traditional casino, VGW's casino games are based entirely or predominately on chance, not skill. A wager is placed on the outcome of a game, and the outcome of that game is driven by randomizing algorithms (random/pseudorandom number generators) whose outputs cannot be controlled by either party. These randomizing algorithms—not VGW or the gambler—control where the reels of a slot machine will stop spinning, what sides of the dice will face up, or what cards will be drawn next from the deck. Thus, it is chance, not skill, that determines the outcome of each wager, even though strategies can be employed to maximize the gamblers' odds in certain games like blackjack, craps, and poker. To the extent some degree of skill is involved in some or all of the VGW Casinos' games, it is chance—not skill—that predominates and determines whether the gambler has the winning hand. Indeed, even in poker, gamblers are betting on the odds of whether their current or future cards will give them the winning hand. When all their chips have been bet, gamblers are at the mercy of the random cards that they and the other gamblers were or will be dealt.

60.    Indeed, chance and luck are baked right into the names Chumba *Casino*, *Lucky*Land *Slots*, and Global *Poker*. And when a gambler finally gets lucky and wins big, the VGW Casinos promote it to the world to lure in new gamblers, and keep existing gamblers coming back in hopes that they will be the next lucky winner.

Below is an example of Chumba Casino advertising how "Leslie D" won $380,195 from a lucky $3 bet on a slot machine:



61.    Similarly, LuckyLand Slots advertises its "Billion Coin Ducks" and "Million Buck Ducks" on the front page of its website—admitting that "some of our ducks are a little luckier than others" and enticing gamblers with the prospect that they might be extra lucky, too:



29

62.    For slot machines and table games like craps and blackjack, both the gambler and VGW put things of value at risk in every wager: the gambler puts up his or her gold or sweepstakes coins (both of which were obtained with the gambler's money); and the VGW Casinos promise to pay certain amounts of gold or sweepstakes coins if the gambler wins. If the gambler wins more gold coins, VGW loses those gold coins—and gamblers do not have to pay cash to obtain more gold coins or to operate the casino games (which can only be operated using VGW's coins). The same is true for the sweepstakes coins. If the gambler wins more sweepstakes coins, VGW loses those sweepstakes coins. The gambler does not have to buy more coin packages to obtain additional sweepstakes coins, and the gambler can either gamble the additional sweepstakes coins or redeem them for cash in a one for one exchange. This is exactly how it works in a traditional casino.

63.    For poker games between gamblers, VGW also participates in the games and/or puts its own money at risk. For example, Global Poker operates by having VGW: (1) take a "rake" (a cut) of the bets, thereby taking a portion of the amounts lost; and/or (2) put its own money directly at risk by offering randomly selected jackpot bonuses to poker game players. Indeed, Global Poker's Card Games Rules confirm that VGW awards randomly selected bonus jackpots of 2 to 200 times the number of sweepstakes coins in the prize pool using probability tables:

| PRIZE POOL MULTIPLIER | FOR AN SC 1 ENTRY, PLAYERS CAN PLAY FOR | FOR A GC 1,000 ENTRY, PLAYERS CAN PLAY FOR | FREQUENCY / PROBABILITY |
|---|---|---|---|
| 200x ('Jackpot Level') | SC 200 | GC 200,000 | 3 in 10,000 |
| 50x | SC 50 | GC 50,000 | 15 in 10,000 |
| 20x | SC 20 | GC 20,000 | 50 in 10,000 |
| 10x | SC 10 | GC 10,000 | 150 in 10,000 |
| 5x | SC 5 | GC 5,000 | 500 in 10,000 |
| 3x | SC 3 | GC 3,000 | 3,282 in 10,000 |
| 2x | SC 2 | GC 2,000 | 6,000 in 10,000 |

64.    Moreover, VGW uses the gold coins to facilitate the purchase of more and more sweepstakes coins. VGW's coin packages come with hundreds of thousands to millions of gold coins, but far fewer sweepstakes coins (approximately the same number of sweepstakes coins as dollars deposited). The VGW Casinos also require gamblers to bet hundreds of gold coins at time, grooming the gamblers and conditioning them to place larger bets of sweepstakes coins. When the gamblers inevitably lose all their sweepstakes coins due to the casino advantage, the gamblers can use their gold coins to keep gambling and keep getting their gambling "fix" until they can afford to buy more coin packages with sweepstakes coins.

65.    The VGW Casinos intentionally design their games to exploit this grooming by allowing the gambler to instantly switch from gold coins to sweepstakes coins between every slot pull, hand of cards, or roll of the dice. Gamblers that win big with gold coins can immediately press their luck and chase a

real money win with sweepstakes coins. And gamblers on a long losing streak with gold coins can switch mid-game to sweepstakes coins in the hopes their unlucky streak is about to end.

### LuckyLand Slots

You may switch the coins you are using in the game by clicking on the icon of the type of coin that you want to use.



### Chumba Casino



NOTE: Click the G (Gold Coins) or S (Sweeps Coins) icons to toggle between your Gold Coin and Sweeps Coin balances depending on your preferred gameplay mode.

### Global Poker



66.    The VGW Casinos also use vivid colors, dynamic animations, high quality graphics, engrossing sound effects, and other carefully crafted enticements to hijack the gamblers' attention and keep them betting. When the gamblers

inevitably run out of sweepstakes coins, the gold coins can tide them over until they deposit more money to gamble real money sweepstakes coins.

**b. VGW ADMITS IT RUNS "REAL MONEY" CASINOS AND SPECIFIALLY TARGETS U.S. STATES IN WHICH GAMBLING IS ILLEGAL**

67.    Any question about whether VGW's "sweepstakes casinos" offer real money gambling has been eliminated by VGW itself. VGW has publicly admitted to the Australian press that its casinos are "real money" casinos that specifically target U.S. states in which gambling is illegal. For example, in one press release, VGW states that it: (1) "develops and operates proprietary technology in ***real money gaming***"; (2) the VGW Casinos are "***targeting*** . . . the unrealized United States ***real-money gaming market***"; and (3) that VGW's "***[s]weepstakes gameplay entails [] real money, online gaming***" in the United States, "where [real money] online gaming is largely prohibited."

68.    VGW cannot now deny what it has already admitted: its casinos target U.S. states that lack any competition due to state anti-gambling laws, then illegally siphon away those residents' funds in "real money, online gaming" under the fig leaf of "[s]weespstakes gameplay."

### c. VGW FRAUDULENTLY CONCEALS ITS OPERATION OF ILLEGAL GAMBLING ENTERPRISES FROM GAMBLERS AND THEIR FAMILY MEMBERS

69.    While VGW boasted about its unlawful conduct in overseas press, VGW simultaneously concealed from its local customers that its casinos were illegal, real money gambling operations. For example, in January 2023, Chumba Casino's Terms and Conditions stated: "THE GAMES AND PLATFORM DO NOT OFFER REAL MONEY GAMBLING."

70.    Further, the Terms and Conditions explained that some states—Idaho and Washington—were excluded, thereby falsely implying that other states—like Montana, Illinois, Kentucky, Ohio, and Tennessee—permitted VGW's online casinos. Indeed, the VGW Casinos *blocked* usage of the website in some locations, falsely representing that the VGW Casinos were lawful in the locations in which the websites functioned.



71.    The VGW Casinos *never* disclosed to its customers that it operated its websites in locations in which it was illegal to gamble real money. To the contrary, the VGW Casinos intentionally concealed those aspects of its operations, while tricking would-be gamblers into gambling real money.

72.    If a would-be gambler or family member wanted to learn more about the VGW Casinos, then they would encounter a litany of false and misleading statements. For example, in December 2023, Chumba Casino's "About Us" page declared that Chumba Casino was "The World's Favorite Social Casino." A so-called "social casino" is one that is "just for fun" and does not entail the gambling of things of value. But Chumba Casino has generated billions of dollars of *real money* revenue because its games involve *real money* gambling.

73.    Further, the "Frequently Asked Questions" page falsely asserted compliance with applicable law:

> **Is Chumba Casino Legal?**
>
> Chumba Casino is a leading social casino site. In addition to our Gold Coin games, we use a unique sweepstakes model which allows the safe and secure redemption of Sweeps Coins for prizes to players in the US and Canada. We pride ourselves on adhering to the laws in the jurisdictions that we operate in. We engage with leading experts in those jurisdictions to ensure that we are fully compliant with all applicable laws.

74.    And this page misleadingly described sweepstakes coins as not for sale, while falsely asserting those coins had "no inherent value:"

**How does Chumba Casino Use Sweepstakes?**

Chumba Casino uses sweepstakes to promote the sale of Gold Coins, providing Sweeps Coins tokens to players to enter our sweepstakes in Promotional Play.

Sweeps Coins can never be purchased and have no inherent value. Players can always obtain Sweeps Coins free via a number of methods, including as a promotion bonus with some Gold Coin purchases, or mailing in requests.

Sweeps Coins which meet the criteria set out in our Sweeps Rules can be redeemed for prizes.

75.    To further confuse would-be gamblers and their family members, this page characterized VGW's operations as akin to a sweepstakes promotion for McDonalds or other blue chip companies:

**What Other Companies Use Sweepstakes?**

Many companies worldwide use sweepstakes to promote and sell their products. Sweepstakes promotions have been running for decades in the US and other countries around the world.

Companies such as McDonalds, Publishers Clearing House, Reader's Digest, Pepsi and Proctor & Gamble all hold widely known, and often global, sweepstakes promotions.

**What is the Risk Laws Will Just Change?**

Low. Sweepstakes are regulated in the US is on a state-by-state basis, so laws in 50 states would need to change.

Further, since Sweepstakes trade promotions are offered by a large number of brands and companies, including many multinationals, any regulatory change would have broad consequences and likely be challenged.

76.    But VGW does not operate a sweepstakes promotion. The VGW Casinos permit gamblers to exchange their money for coins, which can then be gambled to obtain more coins. If gamblers win, then then they can redeem the coins for cash at a 1:1 ratio.

## V.    CLASS ACTION ALLEGATIONS

77.    Plaintiffs incorporate and reallege all foregoing allegations of fact.

78.    Plaintiffs bring this action, on behalf of themselves and all others similarly situated, as a class action pursuant to Federal Rules of Civil Procedure 23(a) and 23(b)(1)–(3). Each Plaintiff seeks to represent a sub-class of members that wagered and lost things of value at a VGW Casino in the Plaintiff's home state ("Sub-Class"), each state being within VGW's primary marketing area of the United States. These state Sub-Classes are:

a.    Dependents and guardians of persons who, while located in Montana: wagered and lost things of value at a VGW Casino since January 1, 2023, and have not sued for and/or recovered such losses (the "Montana Sub-Class").

b.    All family members of persons who, while located in Illinois: wagered and lost things of value worth at least $50 in a VGW Casino since October 28, 2022, and have not sued for and/or recovered such losses (the "Illinois Sub-Class").

c.    All family members of persons who, while located in Kentucky: wagered and lost things of value worth at least $5 within a 24-hour period at a VGW Casino since April 28, 2020, and have not sued for and/or recovered such losses (the "Kentucky Sub-Class").

d.    All family members of persons who, while located in Ohio: wagered and lost things of value at a VGW Casino since October 28, 2018, and have not sued for and/or recovered such losses (the "Ohio Sub-Class").

e.    All family members of persons who, while located in Tennessee: wagered and lost things of value at a VGW Casino since

January 28, 2024, and have not sued for and/or recovered such losses (the "Tennessee Sub-Class").

79.    The state Sub-Classes are collectively referred to herein as the "Class." Excluded from the Class are Defendants' officers, directors, and employees; any entity in which a Defendant has a controlling interest; and the affiliates, legal representatives, attorneys, successors, heirs, and assigns of Defendants. Also excluded from the Class are members of the judiciary to whom this case is assigned, their families, and members of their staff.

80.    Plaintiffs reserve the right to modify any and all Class definitions, including based on discovery and further investigation.

81.    The Class and each Sub-Class are so large as to make joinder impracticable. The Class likely has hundreds of thousands of members, and each Sub-Class also has tens or hundreds of thousands of members. Disposition of these claims in a single action will provide substantial benefits to all parties and to the Court. Class and Sub-Class members are readily ascertainable from information and records in the possession, custody, or control of Defendants, their customers, and public records.

82.    Each class representative's claims are typical of the claims of the Class and Sub-Classes in that: (1) Defendants operate (or operated) the VGW Casinos in each of the Sub-Class States; (2) the VGW Casinos operate (or operated) identically in each of the Sub-Class States; (3) the VGW Casinos are illegal gambling

enterprises under the laws of all the Sub-Class States; (4) the class representatives'
and Class members' families all gambled and lost money or other valuable property
playing games of chance in the VGW Casinos; and (5) all of the Sub-Class States
allow family members to recover the money and other valuable property lost by their
family members at the VGW Casinos.

83.     Plaintiffs are members of the Class and Sub-Classes, and will fairly and
adequately represent and protect the interests of all other members. Plaintiffs'
counsels are competent and experienced in prosecuting complex class actions, and
Plaintiffs have no interest contrary to or in conflict with the interests of Class and/or
Sub-Class members.

84.     Common questions of law and fact exist as to all members of the Class
and Sub-Classes and predominate over any questions solely affecting individual
Class and Sub-Class members. Among the questions of law and fact common to the
Class and Sub-Classes are:

- Whether Defendants engaged in the conduct alleged;

- Whether Defendants operated illegal gambling enterprises in
  violation of state laws;

- Whether gold coins are things of value;

- Whether sweepstakes coins are things of value;

- Whether Plaintiffs, Class members, and Sub-Class members lost money or valuable property gambling in Defendants' illegal gambling enterprises; and

- Whether Plaintiffs, Class members, and Sub-Class members are entitled to recover statutory and/or other damages, including treble damages, exemplary damages, costs, and attorneys' fees.

85.    A class action is superior to all other available methods for the fair and efficient adjudication of this controversy. Absent a class action, most Class and Sub-Class members would likely find the cost of litigating their claims prohibitively high and would have no effective remedy. Given the relatively small size of the individual Class and Sub-Class members' claims, few, if any, Class or Sub-Class members would seek redress for Defendants' violations individually. Class treatment will conserve the resources of the courts and promote consistency and efficiency of adjudication.

86.    Class certification is also appropriate under Rules 23(b)(1)–(3) and/or (c)(5) because:

- The prosecution of separate actions by individual members of the Class and/or Sub-Classes would create a risk of inconsistent or varying adjudications establishing incompatible standards of conduct for Defendants;

- The complexity of issues involved in this action and the expense of litigating the claims, means that few, if any, Class and/or Sub-Class members could afford to seek legal redress individually;

- The prosecution of separate actions by individual Class and/or Sub-Class members would create a risk of adjudications that would, as a practical matter, be dispositive of the interests of other Class and/or Sub-Class, Issue Class members not parties to the adjudications, or would substantially impair or impede their ability to protect their interests;

- The claims of the Class and Sub-Class members are comprised of common issues whose resolution in a class trial would materially advance this litigation; and

- This action does not present any undue difficulties that would impede its management by the Court as a class action.

87.    Subject to additional information obtained through further investigation and discovery, the foregoing definitions of the Class and Sub-Classes may be expanded or narrowed by amendment or amended complaint.

## FIRST CAUSE OF ACTION
### Violation of Mont. Code Ann. § 23-5-131
### (Against All Defendants)
### On Behalf of the Montana Sub-Class

88.    Plaintiff Michelle Lighter individually, and on behalf of the Montana Sub-Class, hereby repeats and realleges every foregoing allegation of fact.

89.    Montana Code Annotated Section 23-5-131 states that "[a] person, or the person's dependent or guardian, who, by playing or betting at an illegal gambling device or illegal gambling enterprise, loses money, property, or any other thing of value and pays and delivers it to another person connected with the operation or conduct of the illegal gambling device or illegal gambling enterprise, within 1 year following the person's loss, may: (1) bring a civil action in a court of competent jurisdiction to recover the loss; (2) recover the costs of the civil action and exemplary damages of no less than $500 and no more than $5,000; and (3) join as a defendant any person having an interest in the illegal gambling device or illegal gambling enterprise."

90.    Plaintiff Lighter and members of the Montana Sub-Class are dependents or guardians of persons who, while located in Montana: (1) paid or delivered money, property, or things of value to a VGW Casino; (2) played or bet money, property, or things of value on an illegal gambling device or in an illegal gambling enterprise at a VGW Casino; (3) lost the money, property, or things of

value to a VGW Casino; and (4) have not sued to recover those losses ("Montana Gamblers").

91.    Upon information and belief, all Montana Gamblers have not sued for and recovered their losses to Defendants, or had any other person sue for and recover those losses.

92.    Accordingly, on behalf of herself and the Montana Sub-Class, and pursuant to Mont. Code Ann. § 23-5-131, Plaintiff Lighter seeks to recover: all money or property lost by Montana Gamblers to a VGW Casino, pre- and post-judgment interest, statutory costs, attorney's fees, statutory exemplary damages, and any other relief deemed appropriate by the Court.

**<u>SECOND CAUSE OF ACTION</u>**
**Violation of 720 ILCS 5/28-8**
**(Against All Defendants)**
**On Behalf of the Illinois Sub-Class**

93.    Plaintiff John Brown individually, and on behalf of the Illinois Sub-Class, hereby repeats and realleges every foregoing allegation of fact.

94.    Section 720 ILCS 5/28-8 of the Illinois Compiled Statutes states that "[a]ny person who by gambling shall lose to any other person, any sum of money or thing of value, amounting to the sum of $50 or more and shall pay or deliver the same or any part thereof, may sue for and recover the money or other thing of value, so lost and paid or delivered, in a civil action against the winner thereof, with costs," and that "[i]f within 6 months, such person . . . does not in fact pursue his remedy,

any person may initiate a civil action against the winner. The court or the jury, as the case may be, shall determine the amount of the loss. After such determination, the court shall enter a judgment of triple the amount so determined."

95.    Plaintiff Brown and members of the Illinois Sub-Class are family members of persons who, while located in Illinois: (1) paid or delivered sums of money or other things of value to a VGW Casino; (2) gambled sums of money or things of value on games of chance at a VGW Casino; (3) lost at least $50 worth of money or things of value to a VGW Casino; and (4) have not sued to recover those losses ("Illinois Gamblers").

96.    Upon information and belief, all Illinois Gamblers have not sued for and recovered their losses to Defendants, or had any other person sue for and recover those losses.

97.    Accordingly, on behalf of himself and the Illinois Sub-Class, and pursuant to 720 ILCS 5/28-8, Plaintiff Brown seeks to recover: all money or things of value lost by Illinois Gamblers to a VGW Casino, pre- and post-judgment interest, statutory costs, attorney's fees, statutory treble damages, and any other relief deemed appropriate by the Court.

## THIRD CAUSE OF ACTION
### Violation of Ky. Rev. Stat. Ann. §§ 372.020 and 372.040
### (Against All Defendants)
### On Behalf of the Kentucky Sub-Class

98.     Plaintiff Trena Ostlund individually, and on behalf of the Kentucky Sub-Class, hereby repeats and realleges every foregoing allegation of fact.

99.     Section 372.020 of the Kentucky Revised Statutes states that "[i]f any person loses to another at one (1) time, or within twenty-four (24) hours, five dollars ($5) or more, or anything of that value, and pays, transfers or delivers it, the loser . . . may recover it, or its value, from the winner . . . by action brought within five (5) years after the payment, transfer or delivery."

100.    Section 372.040 of the Kentucky Revised Statutes states that "[i]f the loser . . . does not, within six (6) months after its payment or delivery to the winner, sue for the money or thing lost, and prosecute the suit to recovery with due diligence, any other person may sue the winner, and recover treble the value of the money or thing lost, if suit is brought within five (5) years from the delivery or payment."

101.    Plaintiff Ostlund and members of the Kentucky Sub-Class are family members of persons who, while located in Kentucky: (1) paid, transferred, or delivered money or other things of value to a VGW Casino; (2) wagered money or other things of value on games of chance at a VGW Casino; (3) lost at least $5 worth of money or things of value to a VGW Casino at one time or within a 24-hour period; and (4) have not sued to recover those losses ("Kentucky Gamblers").

45

102.   Upon information and belief, all Kentucky Gamblers have not sued for, diligently prosecuted and/or recovered their losses to Defendants, or had any other person sue for and recover those losses.

103.   Accordingly, on behalf of herself and the Kentucky Sub-Class, and pursuant to Ky. Rev. Stat. Ann. §§ 372.020 and 372.040, Plaintiff Ostlund seeks to recover: all money or things of value lost by Kentucky Gamblers to a VGW Casino, pre- and post-judgment interest, costs and attorney's fees, statutory treble damages, and any other relief deemed appropriate by the Court.

## FOURTH CAUSE OF ACTION
### Violation of Ohio Rev. Code Ann. §§ 3763.02 and 3763.04
### (Against All Defendants)
### On Behalf of the Ohio Sub-Class

104.   Plaintiff Karim Laury individually, and on behalf of the Ohio Sub-Class, hereby repeats and realleges every foregoing allegation of fact.

105.   Section 3763.02 of the Ohio Revised Code states that "[i]f a person, by playing a game, or by a wager, loses to another, money or other thing of value, and pays or delivers it or a part thereof, to the winner thereof, such person losing and paying or delivering, within six months after such loss and payment or delivery, may sue for and recover such money or thing of value or part thereof, from the winner thereof, with costs of suit."

106.   Section 3763.04 of the Ohio Revised Code states that "[i]f a person losing money or thing of value, as provided in section 3763.02 of the Revised Code,

within the time therein specified, and without collusion or deceit, does not sue, and effectively prosecute, for such money or thing of value, any person may sue for and recover it, with costs of suit, against such winner, for the use of such person prosecuting such suit."

107.    Plaintiff Laury and members of the Ohio Sub-Class are family members of persons who, while located in Ohio: (1) paid or delivered money or things of value to a VGW Casino; (2) played or wagered money or things of value on games of chance at a VGW Casino; (3) lost the money or things of value to a VGW Casino; and (4) have not sued to recover those losses ("Ohio Gamblers").

108.    Upon information and belief, all Ohio Gamblers have not sued for and recovered their losses to Defendants, or had any other person sue for and recover those losses.

109.    Accordingly, on behalf of himself and the Ohio Sub-Class, and pursuant to Ohio Rev. Code Ann. §§ 3763.02 and 3763.04, Plaintiff Laury seeks to recover: all money or things of value lost by Ohio Gamblers to a VGW Casino, pre- and post-judgment interest, statutory costs, attorney's fees, and any other relief deemed appropriate by the Court.

## <u>FIFTH CAUSE OF ACTION</u>
### Violation of Tenn. Code Ann. §§ 29-19-104 and 29-19-105
### (Against All Defendants)
### On Behalf of the Tennessee Sub-Class

110.    Plaintiff Eve Fields individually, and on behalf of the Tennessee Sub-Class, hereby repeats and realleges every foregoing allegation of fact.

111.    Section 29-19-104 of the Tennessee Code states that "[a]ny person who has paid any money, or delivered anything of value, lost upon any game or wager, may recover such money, thing, or its value, by action commenced within ninety (90) days from the time of such payment or delivery."

112.    Section 29-19-105 of the Tennessee Code states that "[a]ny other person may, after the expiration of the ninety (90) days, and within twelve (12) months thereafter, recover the amount of such money, thing, or its value, by action for the use of the spouse; or, if no spouse, the child or children; and, if no child or children, the next of kin of the loser."

113.    Plaintiff Fields and members of the Tennessee Sub-Class are family members of persons who, while located in Tennessee: (1) paid or delivered money or things of value to a VGW Casino; (2) played or wagered money or things of value on games of chance at a VGW Casino; (3) lost the money or things of value to a VGW Casino; and (4) have not sued to recover those losses ("Tennessee Gamblers").

48

114.    Upon information and belief, all Tennessee Gamblers have not sued for and recovered their losses to Defendants, or had any other person sue for and recover those losses.

115.    Accordingly, on behalf of herself and the Tennessee Sub-Class, and pursuant to Tenn. Code Ann. §§ 29-19-104 and 29-19-105, Plaintiff Fields seeks to recover, for the use of the Tennessee Gamblers' spouses, children, or next of kin: all money or things of value lost by Tennessee Gamblers to a VGW Casino, pre- and post-judgment interest, costs and attorney's fees, and any other relief deemed appropriate by the Court.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs respectfully seek an order:

A.    Certifying this case as a class action;

B.    Appointing each Plaintiff as a class representative of the proposed Class and their respective home state Sub-Class and Susman Godfrey L.L.P. and Graybill Law Firm, P.C. as co-lead class counsel representing the Class and each Sub-Class;

C.    Entering judgment for Plaintiffs and the Class and Sub-Classes;

D.    Awarding Plaintiffs and Class and Sub-Class members compensatory damages, restitution, disgorgement, statutory damages, statutory penalties, and statutory treble or exemplary damages, in amounts to be determined, as allowable by law;

E.      Awarding injunctive relief, including non-monetary relief and all such

other legal, specific, or equitable relief as the Court deems proper;

F.      Awarding pre- and post-judgment interest according to law;

G.      Awarding attorneys' fees and costs as required or permitted by law; and

H.      Granting such further and other relief as may be just and proper.

## <u>JURY TRIAL DEMANDED</u>

Plaintiffs hereby demand a trial by jury on all issues so triable.

Dated:      April 28, 2025

By:_____          _____
Raph Graybill                                Bryan Caforio*
**GRAYBILL LAW FIRM**                    Krysta Kauble Pachman*
300 4th Street North                      Erik L. Wilson*
P.O. Box 3586                             Julian Schneider*
Great Falls, MT 59403                     **SUSMAN GODFREY L.L.P.**
Tel: (406) 452-8566                       1900 Avenue of the Stars, Suite 1400
raph@graybilllawfirm.com                  Los Angeles, California 90067-6029
                                          Tel: (310) 789-3100
                                          bcaforio@susmangodfrey.com
                                          kpachman@susmangodfrey.com
                                          ewilson@susmangodfrey.com
                                          jschneider@susmangodfrey.com

                                          *Pro hac vice applications
                                          forthcoming*

                        *Interim Co-Lead Class Counsel*